[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The plaintiff, Metro Square, LLC, is the owner and assignee of the second and third mortgages on the Metro Square Shopping Center (Premises). Thomas Kane and Lucius Pettingill, two of the CT Page 2373 defendants in the current action, are the general partners of Middletown Metro Associates (Middletown). Middletown is the record owner of the Premises. The defendants, Kuzmak-Williams 
Associates and Kuzmak-Williams, LLC (collectively Kuzmak Williams)[1], were successive property managers of the Premises. David Kuzmak, also a defendant in this case, was in charge of the Kuzmak-Williams' business decisions concerning the Premises. Shawmut Bank Connecticut, N.A. (Shawmut), which is not a party to the present action, held the mortgages and agreements at issue in this case prior to assigning and transferring them to the plaintiff:
In exchange for forbearance of defaults on the second and third mortgages, Middletown and Kuzmak-Williams entered into a Lockbox Account Agreement (Lockbox Agreement) with Shawmut. (Second Revised Complaint #127, Para. 9). The Lockbox Agreement assured that all rents from the Premises would be placed in a lock-box account, which was owned by Shawmut. There would also be an operating account, controlled by Kuzmak-Williams, from which to pay the Premises' expenses. (Id., Para. 10).
In January of 1995, Shawmut assigned and transferred all of its interests in the Premises to the plaintiff. (Second Revised Complaint #127, Para. 12). The plaintiff notified Kuzmak and Kuzmak-Williams that new lock-box and operating accounts, in the name of the plaintiff; would now be required. (Id., Para. 14). At the request of Kuzmak and/or Kuzmak-Williams, the plaintiff contributed $37,000 as seed money for the new accounts. (Id, Para. 16-17).
In its second revised complaint, the plaintiff alleges that:
1) Kane and Pettingill directed the defendants, Kuzmak and Kuzmak Williams, to divert $30,000 of the Premises' rental income from the lock-box account into bank accounts established and controlled by Kane and Pettingill;
2) Kane and Pettingill then paid the entire amount to themselves;
3) For five months in 1995, Kuzmak and Kuzmak-Williams refused to deliver the monthly operating reports on the Premises in the time required by the Lockbox Agreement;
4) Kuzmak and Kuzmak-Williams made unauthorized payments of CT Page 2374 the rental money from the Premises for attorney's fees, leasing commissions, and operating expenses; and
5) Kane and Pettingill directed Kuzmak and Kuzmak-Williams to refuse to pay the interest owed to the plaintiff from the second mortgage, even though the Premises' rental income could have covered this debt.
After the plaintiff's second revised complaint was filed, Kuzmak and Kuzmak Williams filed an amended motion to strike the third and fourth counts thereof. The third count of the complaint alleges violation of the Connecticut Corrupt Organizations and Racketeering Activity Act (CORA), General Statutes § 53-393, et seq. The fourth count of the complaint alleges violation of the Racketeer Influenced and Corrupt Organizations Act (RICO),18 U.S.C. § 1961, et seq.
"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 152. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825, 676 A.2d 357
(1996).
Count Three: CORA
Kuzmak and Kuzmak-Williams "move to strike the third count on the ground that CORA does not provide for a civil cause of action." (Defendants' Amended Motion To Strike #125). The plaintiff offers no opposition to this part of the motion to strike.
The relevant factors in determining if a private remedy is implied in a statute that does not expressly provide for one are stated in Napoletano v. Cigna Healthcare of Conn. Inc.,238 Conn. 216, 249, 680 A.2d 127 (1996). These factors, derived from Cortv. Ash, 422 U.S. 66, 78, 95 S.Ct 2080, 45 L.Ed.2d 26 (1975), are: "First, is the plaintiff one of the class for whose . . . benefit CT Page 2375 the statute was enacted. . . Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?. . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotation marks omitted.)Napoletano v. Cigna Healthcare of Conn. Inc., supra,238 Conn. 249.
CORA was designed to stop organized crime and prevent criminals from continuing and profiting from illegal racketeering activities. See Joint Standing Committee Hearings, Judiciary, Pt. 3, 1982 Sess., pp. 661-677. This statute was designed to benefit the victims of illegal racketeering by permanently stopping such endeavors. As such, the first factor of the modified Cort v. Ash
test has been met by the plaintiffs.
However, there is no indication of a legislative intent, either explicitly or implicitly, to create a private right of action or to deny one. The legislative history of CORA speaks only to the criminal penalties involved, except for a brief mention of the provision for victims to regain the forfeited goods.[2] Furthermore, as succinctly stated in Kuzmak and Kuzmak-Williams' memorandum of law in support of the amended motion to strike: "Had the legislature intended to impose criminal and civil liability upon those who engage in the activities prohibited under CORA, it would and could have so provided just as it has in other acts within the same title."[3] (Emphasis in original.) (Memorandum of Law in Support of Defendants' Amended Motion to Strike #125, p. 8).
Lastly, an implied private cause of action under CORA is inconsistent with the underlying purposes of that statute's legislative scheme. CORA was enacted to terminate organized criminal activity in Connecticut. This statute already provides a certain amount of redress for victims of these activities. However, this redress is merely incidental in the battle against organized crime in Connecticut.[4]
The motion to strike count three is granted because CORA does not provide for a civil cause of action. We cannot imply a private cause of action under CORA, as it has failed the modifiedCort v. Ash test as stated in Napoletano v. Cigna Healthcare ofConn. Inc., supra, 238 Conn. 249.
Count Four: RICO
CT Page 2376
Kuzmak and Kuzmak-Williams also move to strike count four, which asserts a private right of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. These defendants claim that the fourth count fails to state a RICO cause of action as a matter of law. The plaintiff claims it has sufficiently alleged an open-ended pattern of racketeering capable of withstanding the defendants' motion to strike.
"To state a [RICO] claim plaintiffs must allege the conduct of an enterprise through a pattern of racketeering activity. . . . A pattern of racketeering activity is a series ofcriminal acts as defined in § 1961(1), and the enterprise is generally a group of persons associated together for a common purpose of engaging in a course of conduct. . . ." (Citations omitted; emphasis in original.) Proctor Gamble v. Big AppleIndus. Bldgs. Inc., 879 F.2d 10, 14-15 (2nd Cir. 1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).
The "pattern of racketeering activity" can be either close-ended or open-ended.[5] An open-ended pattern of racketeering activity requires proof of continuing criminal activity; which is defined as "past conduct that by its nature projects into the future with a threat of repetition." H.I. Inc. v. NorthwesternBell Telephone Co., 492 U.S. 229, 241, 109 S.Ct. 2893,106 L.Ed.2d 195 (1989). The test for continuing criminal activity only looks to whether the scheme, in its natural course, would continue indefinitely rather than terminate as a natural course. Therefore, the "threat of repetition" can still be found, even where the criminal conduct was unexpectedly abandoned or interrupted shortly after its inception. See United States v.Aulicino, 44 F.3d 1102, 1113-14 (2nd Cir. 1995).
These defendants first attack count four by asserting that the plaintiff has not pleaded at least two predicate acts of racketeering activity as required for a private right of action under RICO. See 18 U.S.C. § 1961 (5). "The offenses which may serve as predicate acts for a RICO claim are listed in 18 U.S.C. § 1961. This list is exclusive." Harvey v. Harvey, 931 F. Sup. 127,130 (D.Conn. 1996). Kuzmak and Kuzmak-Williams claim that the only possible RICO predicate act alleged in the complaint is the "one-time alleged distribution by Kuzmak-Williams of $30,000 to Kane and Pettingill." (Memorandum of Law in Support of Defendants' Amended Motion to Strike #126, p. 14). CT Page 2377
In its memorandum of law in opposition to the amended motion to strike, the plaintiff claims three such predicate acts were alleged in its complaint: (1) "Mail fraud, 18 U.S.C. § 2314, due to the Kuzmak defendants having mailed a check in the amount of $22,550.00 representing funds converted from the plaintiff's lockbox account to Pettingill in Florida;" (2) "Fraud and Swindle18 U.S.C. § 1341, due to the Kuzmak defendants' participation in a fraudulent scheme, together with Pettingill and Kane to deprive the plaintiff of its rights in the Instruments of Security;" and (3) "Wire Fraud, 18 U.S.C[. §] 1343, due to the Kuzmak defendants' interstate telephone conversations with Pettingill in Florida, which telephonic conversations were utilized to coordinate the scheme." (Plaintiff's Memorandum in Opposition to Motion to Strike #130, p. 11). The first and third acts were alleged in the plaintiff's second revised complaint and therefore fulfill the two act minimum requirement of RICO.[6]
Kuzmak and Kuzmak-Williams' second attack on the plaintiff's RICO claim is based on the lack of an open-ended pattern of criminal conduct. These defendants assert that "there is no allegation of past criminal conduct coupled with a threat of future conduct." (Memorandum of Law in Support of Defendants' Amended Motion to Strike #126, p. 15). Specifically, they claim that the only RICO predicate act alleged by the plaintiff is the "very brief period of time" during which the Lockbox Agreement was violated. (Id.). Additionally, they note the eventual termination of Kuzmak-Williams as the property managers of the Premises for proof that the threat of illegal conduct was not capable of continuing into the future.[7]
The plaintiff has sufficiently alleged an open-ended pattern of criminal conduct. It can be inferred from the two predicate acts alleged by the plaintiff, considered in light of the situation surrounding those acts,[8] that the criminal activity posed a threat of continuing into the future. The illegal activity of diverting the rental income generated by the Premises would have continued as long as such income continued to flow. This satisfies the threat of continuing criminal conduct, despite that fact that court action prematurely ended this scheme. SeeUnited States v. Aulicino, supra, 44 F.3d 113-14. Therefore, the motion to strike count four is denied.
D'Andrea, J. CT Page 2378