[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#115)
The plaintiff, Judith C. Douglas, filed a six count complaint against Joseph J. Rucci, Jr. and Rucci, Burnham, Carta 
Edelberg, successor in interest to Rucci, Gleason Burnham ("the firm"). The complaint sounds in wrongful discharge (count one), breach of the covenant of good faith and fair dealing (count two), violation of General Statutes §§ 31-71c and 31-71e
(count three), negligent infliction of emotional distress (count four), intentional infliction of emotional distress (count five), and "slander/defamation" (count six). The defendants have filed a motion to strike counts one, two, four, and five.[1]
The plaintiff, in her complaint sets forth over fifty paragraphs of factual allegations. The allegations can be summarized as follows: the plaintiff alleges that in August of 1994, she was hired as a business director for the defendant law firm. She performed her tasks well and was acknowledged by way of both CT Page 9634 verbal praise and increased compensation. Part of her tasks included mediating partnership disputes between two partners: the defendant Rucci and non-party Wilder Gleason. Tensions increased between Rucci and Gleason. According to the plaintiff, she became "the embodiment of Gleason' s desire to modernize and have more professional management, and was the perfect object lesson for Rucci to use with Gleason, particularly in light of the professional friendship which had developed between Gleason and [the] plaintiff during the course of her employment."
Two weeks after Gleason announced his intention to leave the firm, the defendant Rucci asked the plaintiff to resign, giving her "a few days to think about terms under which she would resign." By the next day, however, the defendant was already informing other firm employees that the plaintiff was leaving. The plaintiff alleges that "on information and belief, [the defendant] Rucci's desire for haste was driven, at least in part, by his desire that [the] plaintiff leave before preparation for and participation in an anticipated on-site mediation proceeding concerning the dispute between Gleason and the firm . . . [The defendant] did not want [the] plaintiff, with her knowledge of and access to [f]irm business data, accessible to the mediator and Gleason."
The following day, the defendant allegedly wrongly accused the plaintiff of falsifying firm personnel records, and told plaintiff "to surrender her keys to the building and leave the building immediately." The plaintiff claims, however, that the defendant told her that she "was not being fired." Thereafter, the plaintiff retained legal counsel to contact the firm regarding her terms of resignation.
Eventually, the plaintiff was fired retroactive to May 10, 1996, "despite [another employee] having indicated to her, before she retained a lawyer, that the [f]irm was inclined to leave her on the payroll through at least May and perhaps June 1996."
Finally, the plaintiff further alleges that she was not provided, within 48 hours of her termination, a Form UC-61[2]
stating the reason for her termination. The firm, however, appeared at the Division of Employment with the form, in order "to contest plaintiff's application for unemployment compensation." The form was signed by the defendant Rucci, and contained the alleged fabrication "that [the] plaintiff was CT Page 9635 'discharged for felonious conduct or larceny.'"
"The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial." Gulackv. Gulack, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). The role of the trial court is "to examine the [complaint] construed in favor of the [plaintiff], to determine whether the [plaintiff] has stated a legally sufficient cause of action." Napoletano v.Cigna Healthcare of Connecticut. Inc., 238 Conn. 216, 232-33,680 A.2d 127 (1996), cert. denied, U.S., 117 S.Ct. 1106,137 L.Ed.2d 308 (1997).
 Count One
Count one sounds in wrongful discharge based on a violation of any one of three public policies. The defendant moves to strike count one on the ground that these policies are not "judicially cognizable."
The parties agree that there exists "a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy." Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 76, 700 A.2d 655 (1997). "[T]he general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . [C]ourts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Id., 79. "In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy. . . ." Id., 77.
The public policies alleged by the plaintiff are: "a. That of allowing individuals to seek and obtain legal counsel in handling their affairs; b. That of protecting employees against employment termination done in order to facilitate the commission of tortious or otherwise wrongful conduct against another by their employer; and c. That of favoring the mediation of disputes."
The plaintiff states that the defendants "fail to uncover any Connecticut case law" which states that there does not exist a public policy of allowing employees to retain counsel. The plaintiff also states that Clarkson v. Greentree Toyota Corp. , Superior Court, judicial district of Danbury at Danbury, Docket CT Page 9636 No. 311823 (May 31, 1994, Moraghan, J.), is "the only Connecticut case discussing whether the right to retain counsel is a matter of public policy." The plaintiff claims that the Clarkson court "decided the issue in [the] plaintiff's favor." Specifically, the plaintiff argues that "[t]he holding in Clarkson supports the contention that terminating an individual solely for contacting an attorney is a violation of public policy, as it violates . . . General Statutes § 31-51q." This, however, is not the holding of Clarkson.
In Clarkson, the court was faced with a motion for summary judgment filed by the defendant. Clarkson v. Greentree ToyotaCorp., supra, Superior Court, Docket No. 311823. The plaintiff alleged in her complaint that she was discharged because she had met with an attorney. Id. She further alleged, "that the wrongful discharge was a result of her exercising her rights to freedom of association and speech as guaranteed her under both the United States and Connecticut constitutions as well as [General Statutes §] 31-51q." Id. The court stated that "[w]hether . . . the defendant is liable pursuant to [General Statutes §] 31-51q
is contingent upon a finding of an interference with [the plaintiff's] job performance or working relationship between the parties." Id. Since this issue raised questions of material fact, the court denied the defendants' motion for summary judgment. Id.
Nowhere, however, did the court hold that there exists a judicially cognizable public policy regarding "the seeking and retention of counsel" as it applies in the employment context.
In T.S. Li v. Travelers Ins. Co., No. 3:94cv1840, 1996 WL 732553 (D. Conn. Dec. 18, 1996), the court considered the plaintiff's argument that he was wrongfully terminated and denied severance pay in violation of General Statutes § 31-51q, because he told fellow employees of the defendant employer that he was consulting an attorney regarding a dispute with the employer. Id., *5. The court rejected the plaintiff's contention that " an employee's ability to retain counsel when he feels that his rights are being violated is a legitimate matter of public concern." Id. The court stated, "[o]nly where the plaintiff's speech is a matter of public concern will it be afforded protection under section 31-51q." Id. The court further noted that the decision in Clarkson v. Greentree Toyota Corp.,supra, Docket No. 311823, never reached the merits of whether the employee's speech was a matter of public concern. T.S. Li v.Travelers Ins. Co., supra, 1996 WL 732553, at *5. CT Page 9637
In the present case, the plaintiff has not attempted to implicate a statute or constitutional provision directly, as was done in Clarkson. In Clarkson, the court did not determine that termination for contacting an attorney was a violation of General Statutes § 31-51q. Further, there is no appellate authority recognizing a judicially cognizable public policy regarding the retention of an attorney.
The second alleged public policy is "[t]hat of protecting employees against employment termination done in order to facilitate the commission of tortious or otherwise wrongful conduct against another by their employer."
The plaintiff argues that she was terminated because she would not cooperate with the firm's plans to provide Gleason with inaccurate financial statements in their fraudulent attempt to (1) deceptively dissuade Gleason from leaving the firm or (2) wrongfully avoid paying Gleason the full amount owed to him under the partnership agreement in the event of his separation.
The plaintiff asserts, correctly, that Connecticut has a firmly rooted public policy against fraud. The plaintiff, however, does not allege in her complaint that she was terminated because she was asked to participate in a fraud and refused. The plaintiff fails to allege any facts in the complaint which indicate that she was ever asked to engage in, or assist others to engage in, fraudulent conduct, to cover-up any fraudulent conduct, or that plaintiff witnessed fraudulent conduct. Rather, the facts alleged are that the plaintiff was terminated to allow defendant Rucci to control the flow of information regarding the firm's finances and clientele, in order to keep open his options in relation to handling his dispute with Gleason. That is, by terminating the plaintiff, Rucci would be able to either retain Gleason or deceptively deprive Gleason of his rights. While this state has a strong public policy against fraud, the allegations are only that the plaintiff was terminated so that defendant Rucci would have the ability, if he later chose to, to engage in fraudulent conduct.
The allegations contained in this complaint are very different, for example, from the allegations in Schmidt v.Yardney Electric Corporation, 4 Conn. App. 69, 492 A.2d 512
(1985). In that case, the Appellate Court found that the plaintiff, a discharged at-will employee, alleged facts sufficient to support a cause of action for wrongful discharge CT Page 9638 based on a violation of the public policy against fraud. Schmidtv. Yardney Electric Corporation, supra, 4 Conn. App. 74. There, the plaintiff alleged that he falsified an insurance claim at the insistence of the president of the defendant company — the plaintiff's employer. The insurer paid the claim. The plaintiff later cooperated with auditors and revealed the circumstances of the falsified claim. The plaintiff alleged that he was discharged in retaliation for that cooperation.
In the present case, the plaintiff alleges that she was discharged because she could have impeded defendant Rucci'spossible attempts to deceptively deprive Gleason of his rights under the partnership agreement. There are no allegations that fraud occurred or was in progress. Under the allegations of this complaint, the plaintiff has failed to allege facts sufficient to support a claim of wrongful discharge based on violation of public policy.
The third alleged public policy is "[t]hat of favoring the mediation of disputes."
The plaintiff alleges that Rucci wanted to have her leave the firm before an anticipated on site mediation proceeding regarding the dispute between Gleason and the firm, so that Rucci could unfairly control the mediation process. The plaintiff alleges that Rucci did not want her to be available to the mediator because of her knowledge of, and access to, business data.
Our Appellate Court has stated that, "it is the policy of the law to favor settlement of disputes by arbitration." WesleyanUniversity v. Rissil Construction Associates. Inc.,1 Conn. App. 351, 354, 472 A.2d 23, cert. denied,193 Conn. 802, 474 A.2d 1259
(1984). Assuming that the plaintiff has identified a judicially cognizable public policy, i.e., favoring the mediation of disputes, she does not allege enough facts to indicate that she was discharged in violation of such public policy. The mediation was to be addressed to Gleason's withdrawal from the firm, not the: plaintiff's. The plaintiff was not a party to the mediation. The plaintiff does not allege that her termination would prevent a mediation proceeding from going forward. The plaintiff does not allege that she had exclusive access to this business information, nor does she allege that she had previously been asked to provide any information in preparation for the anticipated mediation. Rather, the plaintiff alleges that she had CT Page 9639 certain knowledge of and access to business information, and by discharging her, Rucci could control the information available to the mediator. There simply are not enough facts alleged to support a claim that the plaintiff' s discharge, viewed in light of her anticipated role in or connection to the mediation, was done in violation of a public policy favoring the mediation of disputes.
The defendants' motion to strike count one, therefore, is granted.
 Count Two
Count two of the complaint sounds in a violation of the covenant of good faith and fair dealing. The defendants move to strike count two on the ground that "the plaintiff was an at will employee and has failed to allege the violation of a judicially cognizable public policy, and therefore no covenant of good faith and fair dealing exists."
"[I]n every contract of employment is a covenant of good faith and fair dealing in the contractual relationship. " Dohertyv. Sullivan, 29 Conn. App. 736, 742, 618 A.2d 56 (1992). In the context of employment-at-will, breach of the covenant of good faith and fair dealing is limited to situations where the discharge of an at-will employee is found to violate public policy. Id., 743. "In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing." Id.
Because this court has found that the plaintiff has failed to state a cause of action for wrongful discharge, the claim for breach of the covenant of good faith and fair dealing must fail. Accordingly, the defendants motion to strike count two is granted.
 Count Four
Count four sounds in negligent infliction of emotional distress. The defendants move to strike count four on the ground that "the plaintiff [fails] to adequately allege (a) unreasonable conduct of the defendants in plaintiff's termination process and (b) that defendants knew that their conduct involved an unreasonable risk of causing emotional distress to [the] plaintiff which might result in her illness or bodily harm." CT Page 9640
In order to state a claim for negligent infliction of emotional distress, "the plaintiff has the burden of pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . Accordingly, negligent infliction of emotional distress in the employment contest arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citation omitted; internal quotation marks omitted.) Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 88-89, 700 A.2d 655
(1997).
The plaintiff argues that the "most outrageous" behavior of which she complains is the fact that the defendants accused her of engaging in felonious conduct or larceny and stated such as the reason for her discharge on the pink slip submitted to the Unemployment Division. The court I agrees that the plaintiff sufficiently alleges conduct which the defendants knew or should have known might cause the plaintiff illness or bodily harm from emotional distress. The court finds that an employer's fabrication of damaging information on a "pink slip" submitted to the Unemployment Division for the purpose of depriving a former employee of unemployment income rises to the level of "unreasonable conduct of the defendant in the termination process."
The defendants' motion to strike count four, therefore, is denied.
 Count Five
Count five of the complaint sounds in intentional infliction of emotional distress. The defendants move to strike count five on the ground that "the plaintiff [fails] to allege sufficiently extreme or outrageous conduct in her termination."
"In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to CT Page 9641 inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort . . ." (Internal quotation marks omitted.) Drew v. K-martCorp. , 37 Conn. App. 239, 251, 655 A.2d 806 (1995).
The court, again, notes the allegation that the defendants attempted to deprive the plaintiff of unemployment compensation by lying about felonious conduct on the form submitted to the Unemployment Division. This conduct might be construed by a trier of fact as evidence of an intent to cause the plaintiff injury. Further, this court finds that such conduct is sufficiently extreme and outrageous.
The defendants' motion to strike count five, therefore, is denied.
KARAZIN, J.