[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE # 119
This memorandum of decision addresses the Motion to Strike submitted by the defendant United Church of Christ (UCC) under date of March 10, 2000 (#119). Through this motion, UCC seeks to strike the Seventeenth, Nineteenth and Twentieth counts of the plaintiff's revised complaint dated November 2, 1999, which counts allege its liability for losses sustained by the plaintiff (#104). The Seventeenth count of the complaint is styled as sounding in negligence on the part of UCC; the Nineteenth count is styled as sounding in intentional infliction of emotional distress; and the Twentieth count is styled as sounding in recklessness.[1] UCC argues that these counts fail to sufficiently state claims upon CT Page 10683 which relief may be granted, and moves that they be stricken from the complaint. The court finds these matters in favor of the plaintiff.
The revised complaint contains twenty counts, each founded upon an improper sexual relationship involving the plaintiff and her former clergyman and employment supervisor, William Sexton: this relationship is alleged to have taken place on divers occasions following November of 1994, and is alleged to have caused the plaintiff to suffer various forms of loss. The First through Fourth Counts have been brought against Sexton's legal representative.[2] The Fifth, Sixth, Seventh and Eighth Counts have been brought against the defendant First Congregational Church of Vernon, who ostensibly employed Sexton in his capacity as an ordained minister at that church. The Ninth, Tenth, Eleventh and Twelfth Counts have been brought against the defendant United Church of Christ Connecticut Conference. The Thirteenth, Fourteenth, Fifteenth, and Sixteenth Counts have been brought against the defendant Tolland Association of the United Church of Christ. As noted, the Seventeenth, Eighteenth, Nineteenth and Twentieth Counts have been brought against the moving defendant, UCC. The Ninth through Twentieth counts generally appear to be based upon the premise that the defendants United Church of Christ Connecticut Conference, Tolland Association of the United Church of Christ and UCC were each responsible for the placement of Sexton in his position of minister at the First Congregational Church of Vernon, and that each was charged with the duty to govern Sexton while he worked in this capacity and while the alleged sexual activity took place.
In reviewing these claims, the court has heeded the legal principles related to the motion to strike. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint. . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded." RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 383 n. 2, 650 A.2d 153
(1994); see also Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215,618 A.2d 25 (1992). Thus, the role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff] [has] stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127 (1996).
Connecticut is a "fact pleading" state. Section 10-1 of the Practice Book requires that "[e]ach pleading . . . contain a plain and concise CT Page 10684 statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . ." "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820,825, 676 A.2d 357 (1996). However, when considering a defendant's motion to strike, "[t]he court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulknerv. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). Insofar as a plaintiff's obligation to plead specific and precise facts is concerned, our Supreme Court has cautioned that "if facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . What is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted.) Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998). The court has considered the issues raised through UCC's motion and the plaintiff's Objection (#129) in the light cast by these standards of law.
 I. FACTS ALLEGED IN THE COMPLAINT
As drafted, the Seventeenth Count incorporates by reference Paragraphs1-23 of the First Count, and presents anew Paragraphs 24, 25 and 26. The Nineteenth and Twentieth Counts each incorporate by reference and use Paragraphs 1-26 of the Seventeenth Count, adding additional paragraphs as well. Accordingly, the court has been called upon to examine all the facts as stated in the First Count, as well as in the Counts which are the immediate subject of this motion to strike. Waters v. Autori, supra,236 Conn. 825.
The pertinent facts as alleged by plaintiff may be summarized briefly as follows: Sexton was an ordained minister serving as an employee at the First Congregational Church of Vernon. UCC supervised Sexton's appointment, training, qualifications and moral fitness to serve as a minister, and provided counseling and psychiatric care for persons serving in such positions. UCC could require Sexton to participate in psychological support or care activities as a condition of maintaining his ministerial credentials. UCC knew that Sexton had an improper sexual relationship with a female member of another church prior to his assignment in Vernon. UCC knew that Sexton had been terminated from that prior position, and had required him to undergo training and psychological treatment before his reassignment to service as a minister at Vernon's First Congregational Church. The plaintiff, a female, was a member of the First Congregational Church of Vernon and was employed by that church in a position subordinate to that of the minister. Unsupervised, Sexton provided counseling services to the plaintiff in his capacity as her CT Page 10685 minister, and engaged in an improper sexual relationship with her in violation of that church's sexual harassment policy. This relationship took place during working hours while the plaintiff was under Sexton's supervision, and included bizarre sexual practices. Sexton also employed various means of controlling the plaintiff, causing and coercing her to accede to his sexual demands and to continue engaging in improper sexual activities. These events caused the plaintiff to seek and obtain psychological counseling and treatment and to resign her employment as an employee of the First Congregational Church of Vernon.
 II THE SEVENTEENTH COUNT — NEGLIGENCE
As to the Seventeenth Count, UCC claims that the plaintiff has failed to allege all of the essential elements of a cause of action in negligence. Specifically, UCC argues that the "Seventeenth Count . . . is devoid of any allegation of actual injury, either bodily or emotional," and that without such a specific allegation of injury, the count cannot support her claim for damages. The court finds this issue in favor of the plaintiff.
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury.Catz v. Rubenstein, 201 Conn. 39, 44, 513 A.2d 98 (1986); Calderwood v.Bender, 189 Conn. 580, 584, 457 A.2d 313 (1983); W. Prosser, W. Keeton, Torts (5th Ed. 1984) § 30, pp. 164-65." RK Constructors, Inc. v.Fusco Corp., supra, 231 Conn. 384. In this matter, the court's analysis focuses upon the final element, actual injury, and determines that the plaintiff has adequately plead facts to support her action in negligence through this count.
The Restatement of Torts defines the word "injury" as it is used in the course of that treatise: "The word `injury' is used throughout the Restatement of this Subject to denote the invasion of any legally protected interest of another." 1 Restatement (Second), Torts § 7 (1), p. 12 (1965). Injury denotes a concept which is separate and distinct from "harm", the latter being defined as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." 1 Restatement (Second), Torts § 7(2), p. 12 (1965). As explained in the commentary, `harm' implies the existence of loss or detriment in fact, which may not necessarily be the invasion of a legally protected interest. The most usual form of injury is the infliction of some harm; but there may be an injury although no harm is done." 1 Restatement (Second), Torts § 7, comment a., p. 13 (1965). Even where an actual injury occurs in the Restatement sense, the difficulties inherent in the CT Page 10686 demonstration and proof of related harm may result in an award of nominal damages. See, e.g., Doe v. Montessori School, 678 N.E.2d 1082, 1091
(Ill.App. 2 Dist. 1997).
In arguing that the plaintiff has failed to meet the standards requisite to pleading actual injury, UCC urges the court to adopt a more strict and limited interpretation of the term "injury". Rather than acknowledging the complaint's clear, but discrete, statements of fact and the logical inferences that may be drawn from allegations reporting Sexton's involvement in an "improper sexual relationship" while he occupied a dominant position in the plaintiff's life, UCC suggests that the court focus upon the plaintiff's allegations related to the nature of remedial care and treatment she required in an effort to address the harm inherent in this improper sexual relationship. This argument shift the focus toward the subject of "harm" and away from "injury, "the fourth stated element of tort actions as established by the precedents above. See, e.g., Catz v. Rubenstein, supra, 201 Conn. 44. The allegations establishing the plaintiff's relationship with Sexton, with the implications raised by the plaintiff's reference to abuse of authority (Paragraph 13), coerced accession to Sexton's sexual demands (Paragraph 14), subjugation of the plaintiff to Sexton's bizarre sexual practices (Paragraph 17), and control of her actions as a means of maintaining an improper sexual relationship (Paragraph 20) all, fairly read, at the least must be seen to imply multiple invasions of the plaintiffs personal and physical interests. See Pamela B. v. Ment, 244 Conn. 308. These invasions constitute actual injuries, in and of themselves.[3] 1 Restatement (Second), Torts § 7(1).
The defendant summarily asserts that allegations of such invasions constitute nothing more than a re-statement of the plaintiff's claims for negligent infliction of emotional distress. UCC's Memorandum of Law in Support of Motion to Strike, dated March 10, 2000 (# 119.10), page 6. However, UCC fails to point to any case, nor has the court's research uncovered one, which would support this limited interpretation. SeeRivera v. Double A. Transportation, Inc., 248 Conn. 21, 26, 727 A.2d 204
(1999) (liberal interpretation of the term "injury" as used in § 584). On the contrary, our courts have construed the term "injury" in a broad and encompassing fashion. Id. "[A]n injury signifies a wrong done to a person, or in other words, a violation of that person's right. . . ." Id. The court accordingly finds that in the Seventeenth Count, the plaintiff has alleged facts sufficient facts to legally state a cause of action in negligence. See Napoletano v. Cigna Healthcare of Connecticut,Inc., supra, 238 Conn. 232-33.
 III CT Page 10687 THE NINETEENTH COUNT — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
As to the Nineteenth Count, UCC claims that the plaintiff here has failed to allege distinct allegations of intentional, extreme or outrageous conduct which would differentiate this count from her claims based on negligent infliction of emotional distress, which are set forth in the Eighteenth Count. The court finds this issue in favor of the plaintiff.
As noted, the Nineteenth Count incorporates by reference Paragraphs 1-26
of the Seventeenth Count: the Seventeenth Count had incorporated by reference Paragraphs 1-23 of the First Count, and presented new Paragraphs 24, 25 and 26. In addition to the facts described in Part II, above, Paragraph 27 of the Nineteenth Count alleges that UCC's "conduct was intentional and was extreme and outrageous, transcending the bounds of decency tolerated by society." This paragraph further alleges that UCC "knew, or reasonably should have known, that severe emotional distress was a likely result of its conduct." In Paragraph 28 of the Nineteenth Count, it is asserted that as a proximate result of UCC's "extreme and outrageous conduct, Plaintiff has and will continue to suffer extreme emotional distress." Paragraphs 27 and 28 thus must be read in conjunction with the remaining paragraphs of the Nineteenth Count, including Paragraph 7, which asserts that UCC was "responsible" for Sexton's placement as a minister of the First Congregational Church of Vernon, where the plaintiff worshiped and worked under his direction. The defendant argues that these allegations are insufficient to establish a distinct claim based on intentional infliction of emotional distress: the plaintiff counters that the allegations, taken together, are adequate as a matter of law.
Viewed in its entirety, the Nineteenth Count sets forth the essential elements of intentional infliction of emotional distress, as most recently affirmed in Appleton v. Board of Education, 254 Conn. 205, ___ A.2d ___ (2000). "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.' (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 253,510 A.2d 1337 (1986). Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Bell v. Board of Education,55 Conn. App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds CT Page 10688 disagree does it become an issue for the jury. Id." (Brackets in the original.) Appleton v. Board of Education, supra, 254 Conn. 210.
"`Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . .' Petyan v. Ellis, supra. 200 Conn. 254 n. 5, quoting W. Prosser W. Keeton, Torts (5th Ed. 1984) § 12, p. 60. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!'" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). `Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.' Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 19, 597 A.2d 846 (1991)." Appletonv. Board of Education of the Town of Stonington, supra, 254 Conn. 210-211.
In evaluating this aspect of UCC's motion to strike, this court is thus obligated to determine whether the Nineteenth Count of the revised complaint sets forth facts which convey extreme and outrageous conduct on the part of UCC. In Paragraph 27 of, the plaintiff alleges that UCC's "transcended the bounds of decency tolerated by society." While summary in nature, this paragraph is amply supported by reference to the preceding twenty-six paragraphs, incorporated from the First and Seventeenth Counts. See Novametrix Medical Systems, Inc. v. BOC Group,Inc., supra, 224 Conn. 215. Here; the plaintiff has asserted multiple references to UCC's knowledge of Sexton's history of exposing female employees and church members to predatory conduct, and its knowledge that this agent/employee had left a previous clerical position due to such behavior (Paragraphs 16. and 25). The plaintiff has further specified the scope of UCC's obligation to "revoke, remove, withdraw or restrict" Sexton's ministerial duties in order to prevent the recurrence of such predatory acts with other female employees and church members, and UCC's failure to do so in the face of such danger. Such facts implicitly state UCC's knowledge that such harm as here occurred was indeed likely to occur, and establish an adequate factual basis for a finding that UCC's acts intentionally placed Sexton, without close monitoring or supervision, in a place where he presented a danger-without-warning to prey who crossed his path. Giving credit to Sexton's history, reasonable persons in contemporary times may, indeed, respond to his intentional placement at the First Congregational Church in Vernon by exclaiming, "Outrageous!"[4]
CT Page 10689
The defendant argues that the plaintiff's factual claims in the Nineteenth Count are overly repetitive of those raised in the preceding count, which sounds in negligent infliction of emotional distress, and that she should therefore be deprived of the opportunity to proceed here on the basis of allegations that UCC's conduct was intentional. Such a style of pleading does not, however, defeat the plaintiff's cause of action in this count, as the plaintiff is clearly entitled to plead in the alternative, as she has done. Practice Book § 10-25. "It is true, of course, that intentional tortious conduct will ordinarily also involve one aspect of negligent conduct, namely, that it falls below the objective standard established by law for the protection of others against unreasonable risk of harm. That does not mean, however, as the [defendant's] argument suggests, that the same conduct can reasonably be determined to have been both intentionally and negligently tortious. The distinguishing factor between the two is what the negligent actor does not have in mind: either the desire to bring about the consequences that follow or the substantial certainty that they will occur. If he acted without either that desire or that certainty, he was negligent; if he acted with either that desire or that certainty, he acted intentionally." (Internal quotation marks and citations omitted.) American National FireIns. Co. v. Schuss, 221 Conn. 768, 777, 607 A.2d 418 (1992).
A fair and reasonable application of these principles to the facts in this aspect of the complaint, as alleged through and as incorporated into the Nineteenth Count, clearly permits the conclusion that UCC acted intentionally, and not merely negligently, in placing Sexton at the First Congregational Church in Vernon. See American National Fire Ins. Co. v.Schuss, supra, 221 Conn. 777-78. If the allegations of the complaint are fully established and believed by the trier of fact, the rational conclusion would be that in this situation the defendant UCC intended, in the sense discussed, to bring about a result, namely, the exposure of Sexton's congregants and church employees to his sexual proclivities, with the anticipated emotional distress caused to his victim or victims thereby. The degree of the intentional invasion of the plaintiff's person or emotional interests is not determinative. "It is not necessary that the precise injury that occurred be the one intended, so long as the injury was the direct and natural consequence of the intended act." (Citations omitted.) Id.
Thus, construing the facts as alleged in the complaint most favorably to the pleader, it is apparent that the Nineteenth Count is based upon the plaintiff's claim that UCC, acting in its governing capacity, intentionally placed Sexton in his position at the First Congregational Church of Vernon when it knew, or reasonably should have known, that severe emotional distress was the likely result of this conduct; that the placement of Sexton in this position, where he was likely to encounter CT Page 10690 admiring, vulnerable individuals such as the plaintiff, was extreme and outrageous; that UCC's conduct in so placing Sexton was the cause of the plaintiff's distress; and that the plaintiff sustained severe emotional distress as the result of her exposure to Sexton and his predilections. See Appleton v. Board of Education, supra, 254 Conn. 211; Pamela B. v.Ment, supra, 244 Conn. 208. The court accordingly finds that in the Nineteenth Count, the plaintiff has alleged facts sufficient to state a cause of action sounding in intentional infliction of emotional distress. See Napoletano v. Cigna Healthcare of Connecticut, Inc., supra, 238 Conn. 232-33.
 IV THE TWENTIETH COUNT — RECKLESSNESS
As to the Twentieth Count, based on UCC's recklessness, the defendant first claims that the plaintiff has failed to make any allegation of actual injury, and that this count therefore must fall. The court finds this issue in favor of the plaintiff, adopting the legal principles and application to the facts as discussed in Part II above. The defendant next claims that the Twentieth Count is insufficient in that the plaintiff has failed to allege reckless misconduct on UCC's part in a way that would differentiate this claim from the claim based on negligent conduct, as set forth in the Seventeenth Count. The court finds this issue in favor of the plaintiff.
As discussed, the Twentieth Count incorporates by reference Paragraphs1-26 of the Seventeenth Count: the Seventeenth Count had incorporated by reference Paragraphs 1-23 of the First Count, and presented new Paragraphs 24, 25 and 26. In addition to the facts described in Part II, above, Paragraph 27 of the Twentieth Count alleges that UCC "acted with wanton and reckless disregard as to the Plaintiff and other female employees and church members who would form a target class for Defendant "Sexton's' known predatory sexual practices of which it was fully aware, his being required to undergo mandatory psychological counseling." Paragraphs 27 thus mist be read in conjunction with the remaining paragraphs of the Twentieth Count, including Paragraph 7, which asserts that UCC was "responsible" for Sexton's placement as a minister of the First Congregational Church of Vernon where the plaintiff worshiped and worked under his direction. The defendant argues that these allegations are insufficient to establish a distinct claim based on recklessness: the plaintiff counters that the allegations of the Nineteenth Count, taken altogether, are adequate as a matter of law.
In tort matters, our courts have defined the terms "wanton" and "reckless" as follows: "Recklessness is a state of consciousness with CT Page 10691 reference to the consequence of one's acts. . . . it is more than negligence, more than gross negligence. . . . The state of mind amountingto recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." (Emphasis added, quotation marks and citations omitted.) Dubayv. Irish, 207 Conn. 518, 532, 542 A.2d 711 (1988). See also Elliot v.City of Waterbury, 245 Conn. 385, 415, 715 A.2d 27 (1998).
In applying this standard to the facts set forth in the Twentieth Count, the court is cognizant of its obligation to review the pertinent allegations as a whole, and to view them in the light most favorable to the plaintiff. The Twentieth Count does not present allegations which are devoid of factual references or detail concerning the defendant's placement of Sexton at the church in question, nor does the count lack specific reference to UCC's knowledge of Sexton's history of sexual indiscretions or their harmful effect. This count does not set forth conclusory allegations, without supporting factual references. Rather, evidence in support of the Twentieth Count's allegations in their entirety, if believed, would provide a sufficient basis upon which a trier of fact reasonably could find that UCC acted recklessly in its placement of Sexton as the minister of the First Congregational Church of Vernon, where he was expected to supervise and counsel female staff members congregants. To have made this placement, while it knew the predatory practice that Sexton had exhibited in a similar situation, would satisfy "the necessary "aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.' (Internal quotation marks omitted.) Dubayv. Irish, supra, 207 Conn. 533." Eliiot v. City of Waterbury, supra,245 Conn. 418. Such conduct reasonably implies that UCC held a reckless disregard of the consequences of this placement. As such, these allegations, if credited by the trier of fact, would support a claim that UCC acted recklessly in assigning Sexton to his service in Vernon, and that thereby, this defendant caused the invasion of personal interests and losses of which the plaintiff complains.
The court accordingly finds that in the Twentieth Count, the plaintiff has alleged facts sufficient facts to legally state a cause of action in recklessness. See Napoletano v. Cigna Healthcare of Connecticut, Inc., supra. 238 Conn. 232-33.
WHEREFORE, the Motion to Strike (#119) submitted by the defendant, United Church of Christ Conference is hereby DENIED. CT Page 10692
BY THE COURT, N. Rubinow, J.